# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**ANDRE VAUGHN WHITE,**

    **Petitioner-Defendant,**

v.                                                          **Civil Action No. 1:12-cv-84**
                                                         **Criminal Action No. 1:09-cr-52-1**
                                                          **(Judge Keeley)**

**UNITED STATES OF AMERICA,**

    **Respondent-Plaintiff.**

## REPORT AND RECOMMENDATION/OPINION

### I. INTRODUCTION

On May 16, 2012, Andre Vaughn White ("Petitioner"), proceeding *pro se*, filed a Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody. (Civil Action No. 1:12-cv-84, Docket No. 1; Criminal Action No. 1:09-cr-52-1, Docket No. 215.) On May 18, 2012, the undersigned entered an Order directing the Government to respond to Petitioner's motion. (Civil Action No. 1:12-cv-84, Docket No. 3; Criminal Action No. 1:09-cr-52-1, Docket No. 217.) The Government filed its response on June 14, 2012. (Civil Action No. 1:12-cv-84, Docket No. 6; Criminal Action No. 1:09-cr-52-1, Docket No. 220.) Petitioner filed a reply on June 27, 2012. (Civil Action No. 1:12-cv-84, Docket No. 7; Criminal Action No. 1:09-cr-52-1, Docket No. 221.)

The undersigned now issues this Report and Recommendation on Petitioner's motion without holding an evidentiary hearing. For the reasons stated below, the undersigned recommends that the District Judge deny and dismiss Petitioner's motion.

## II. FACTS

### A. *Conviction and Sentence*

On April 14, 2009, a Grand Jury sitting in the Northern District of West Virginia returned an Indictment in which Petitioner was charged with nineteen (19) counts of drug-related offenses. (Docket No. 19.)[1] However, on June 15, 2010, Petitioner entered into a plea agreement under which he agreed to plead guilty to Count Seventeen of the Indictment, which charged him with aiding and abetting the possession with intent to distribute five grams or more of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), and 18 U.S.C. § 2, and less than one hundred grams of heroin, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), and 18 U.S.C. § 2. (Docket No. 122 at 1.) In the plea agreement, Petitioner waived his right to appeal and collaterally attack his sentence. (Id. at 4.) Specifically, Petitioner's plea agreement contained the following language regarding his waiver:

> The above paragraph notwithstanding, the defendant will retain his appellate rights and rights to collaterally attack his sentence only with respect to any sentence imposed using a base offense level of 37 or higher. This reservation of rights is designed to ensure that the United States and the defendant retain the benefits of the plea agreement. It is not intended to represent the defendant's estimation of what an appropriate or reasonable sentence would or should be. Nor does this reservation of rights prevent the defendant from arguing for a sentence below the aforementioned adjusted Guideline offense levels. The United States will retain the right to appeal any sentence imposed.

(Id.) Petitioner's plea agreement also contained the following stipulation:

> Pursuant to Sections 6B1.4 and 1B1.3 of the Guidelines, the parties hereby stipulate and agree that, on or about January 4, 2009, at or near Anmoore, Harrison County, West Virginia, and Greenwood, Doddridge County, West Virginia, the defendant, aided and abetted by other persons, unlawfully, knowingly and intentionally possessed with the intent to distribute five (5) grams or more of cocaine base, also known as "crack" and a quantity of heroin. The parties stipulate and agree that Mr. White's total relevant conduct, when converted to marijuana equivalent, is at least

---

[1] From this point forward, all docket numbers refer to Criminal Action No. 1:09-cr-52-1.

> 10,000 kilograms but less than 30,000 kilograms, **and that a 2-level enhancement applies under § 2D1.1(b)(1) for defendant's possession of a dangerous weapon (including a firearm)**. The Court is not bound by the above stipulation and is not required to accept the same. Mr. White understands and agrees that should the Court not accept the above stipulation, Mr. White will not have the right to withdraw his plea.

(Id. at 3 ¶ 9 (emphasis added).) That same day, Petitioner appeared before the undersigned to enter his plea in open court. (Docket No. 176.) During the Rule 11 hearing, the following relevant colloquy occurred:

> THE COURT: Do you further understand, that the District Judge is not bound by the **nonbinding** stipulation contained in paragraph 9?
>
> THE DEFENDANT: Yes.
>
> THE COURT: And if the Judge found facts that are different from that which is in paragraph 9, do you understand that the Court could go with its own finding of facts?
> THE DEFENDANT: Yes.
>
> THE COURT: And it would then sentence you based on its findings and that you would not then have a right to change your mind and withdraw your guilty plea?
>
> THE DEFENDANT: Yes.

(Id. at 18:12-23.)

Petitioner appeared before United States District Judge Irene M. Keeley for sentencing on November 22, 2010. (Docket No. 174.) Judge Keeley noted that Petitioner and his counsel had objected to the stipulation for a two-level enhancement for use of a weapon in relation to the drug charges; however, Petitioner's attorney withdrew the objection at sentencing. (Id. at 5.) Judge Keeley stated that the Sentencing Guidelines called for a base offense level of 34. (Id. at 13.) She applied the two-level increase based on the stipulation for use of a firearm, raising the offense level to 36. (Id.) However, a three-level reduction for acceptance of responsibility was applied, making

the offense level 33. (Id.) With Petitioner at a Criminal History Category of I, an offense level of 33 called for a Guidelines range of 135 to 168 months of incarceration. (Id.)

Subsequently, the Government moved to have an additional two-level reduction pursuant to U.S.S.G. § 5K1.1 for Petitioner's substantial assistance. (Id. at 14.) The Court ultimately determined that a three-level reduction was appropriate based upon Petitioner's substantial and continued assistance to the Government. (Id. at 19.) Accordingly, Petitioner's offense level was lowered to 30, with a sentencing range of 97 to 121 months of incarceration. (Id.)

After taking into consideration all relevant factors and the statements made by counsel for the Government, counsel for Petitioner, and Petitioner himself, Judge Keeley sentenced Petitioner to 97 months of imprisonment to be followed by four (4) years of supervised release. (Id. at 27.) Neither Petitioner nor the Government objected. (Id. at 28.)

### B. *Direct Appeal*

Petitioner subsequently appealed his conviction and sentence to the United States Court of Appeals for the Fourth Circuit. See United States v. White, 436 F. App'x 277 (4th Cir. 2011) (per curiam). Petitioner's counsel filed a brief pursuant to Anders v. California, 386 U.S. 738 (1967), asserting that there were no meritorious grounds for appeal "but questioning whether [Petitioner] knowingly and intelligently pleaded guilty, and whether the court erred in sentencing [him] to ninety-seven months' imprisonment." Id. at 277. The Government filed a motion to dismiss based upon the appellate waiver contained in Petitioner's plea agreement. Id. Petitioner filed a *pro se* supplemental brief "arguing that the Government breached the plea agreement and the district court erred in failing to address [his] objections to the Presentence Investigation Report ("PSR")." Id. The panel determined that Petitioner's guilty plea "was knowing and voluntary," that Petitioner's waiver

4

was valid and enforceable as to his "challenges to his sentence," and that his *pro se* claims lacked merit. Id. at 278.

C. *Federal Habeas Corpus*

   1. **Petitioner's Motion**

In his motion, Petitioner asserts that counsel was ineffective "in his failure to produce evidence that could have potentially negated [him] from receiving a two point enhancement for possession of a dangerous weapon." (Docket No. 215-1 at 1.) Petitioner further argues that but for counsel's failure to do so, he could have received a lesser sentence. (Id. at 3.)

   2. **Government's Response**

In its response, the Government asserts:

1. Petitioner waived his right to bring a motion pursuant to 28 U.S.C. § 2255;

2. Petitioner stipulated that the two-level enhancement applied; and

3. The two-level enhancement was appropriately applied regardless of counsel's actions.

(Docket No. 220 at 2-7.)

   3. **Petitioner's Reply**

In his reply, Petitioner states that his ineffective assistance of counsel claim is not barred by his waiver. (Docket No. 221 at 1.) He also reiterates the arguments made in his motion. (Id. at 2-3.)

### III. ANALYSIS

A. *Standard Governing Claims of Ineffective Assistance of Counsel*

The Supreme Court has set forth a two-prong test for determining whether a convicted defendant's claim of ineffective assistance of counsel warrants the reversal of his conviction.

Strickland v. Washington, 466 U.S. 668, 687 (1984). First, "the defendant must show that counsel's performance was deficient." Id. Second, "the defendant must show that the deficient performance prejudiced the defense." Id. These two prongs are commonly referred to as the "performance" and "prejudice" prongs. Fields v. Att'y Gen. of Md., 956 F.2d 1290, 1297 (4th Cir. 1992).

To satisfy the "performance" prong, the defendant must demonstrate that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment." Strickland, 466 U.S. at 687. However, a reviewing court does not "grade" trial counsel's performance, and there is a strong presumption that "counsel's conduct falls within the wide range of reasonable professional assistance." Carter v. Lee, 283 F.3d 240, 249 (4th Cir. 2002). Essentially, the reviewing court must not "second-guess" counsel's performance and must "evaluate counsel's performance 'from counsel's perspective at the time.'" Hunt v. Lee, 291 F.3d 284, 289 (4th Cir. 2002). Furthermore, the standard of reasonableness is objective, not subjective. See Strickland, 466 U.S. at 688.

To satisfy the "prejudice" prong, the defendant must demonstrate that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id. at 687. Therefore, if counsel's errors have no effect on the judgment, the conviction should not be reversed. See id. at 691. A defendant who alleges ineffective assistance of counsel following a guilty plea has an even higher burden: "he must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985); Hooper v. Garraghty, 845 F.2d 471, 475 (4th Cir. 1988). The Fourth Circuit has recognized that if a defendant "cannot demonstrate the requisite prejudice, a reviewing court need not consider the performance prong." Fields, 956 F.2d at 1297.

6

The Fourth Circuit has set forth two categories of decisions made by trial counsel. First, there are "personal" decisions that require consent from the defendant, such as the decision to enter a guilty plea, the decision to waive a trial by jury, the decision to appeal, and the decision of whether to testify at trial. See Sexton v. French, 163 F.3d 874, 885 (4th Cir. 1998). The second category includes decisions that "'primarily involve trial strategy and tactics,' such as 'what evidence should be introduced, what stipulations should be made, what objections should be raised, and what pre-trial motions should be filed.'" Id. (quoting United States v. Teague, 953 F.2d 1525, 1531 (11th Cir. 1992)). Accordingly, "[t]here is a strong presumption that counsel's attention to certain issues to the exclusion of others reflects trial tactics rather than sheer neglect." Harrington v. Richter, 131 S. Ct. 770, 790 (2011) (citations and internal quotation marks omitted).

As noted above, Petitioner's plea agreement contained a waiver of his appellate and collateral attack rights. (Docket No. 122 at 4.) As to ineffective assistance of counsel claims raised regarding an attorney's action, or lack thereof, after the plea agreement, the Fourth Circuit has stated that the right to challenge a sentence on the ground that "the proceedings following entry of the guilty plea–including both the sentencing hearing itself and the presentation of the motion to withdraw their pleas–were conducted in violation of their Sixth Amendment right to counsel" is not waived by a general waiver of appellate rights contained in the plea agreement. United States v. Attar, 38 F.3d 727, 732-33 (4th Cir. 1994). Therefore, "upon first blush it appears that [such] claims arising after the guilty plea and/or during sentencing are not barred by a general waiver of appeal rights." Oden v. United States, Civil No. 3:13-cv-93, Criminal No. 3:11-cr-56, 2014 WL 2462993, at *8 (N.D. W. Va. June 2, 2014.) Here, because Petitioner is challenging counsel's actions at sentencing, his claim is not barred by his waiver.

7

### B. Petitioner Cannot Establish Ineffective Assistance at Sentencing

As noted above, Petitioner's only claim is that counsel was ineffective for withdrawing his objection to the two-level enhancement for possession of a firearm during a drug-related offense. (Docket No. 221 at 1.) According to Petitioner, counsel was also ineffective for failing to present any evidence to show that a firearm was not possessed, failing to argue against the two-level enhancement, and failing to move for a hearing so the Court could determine the issue. (Id.) In fact, Petitioner specifically notes that "he is not contending his guilt as to the possession of a controlled substance and . . . does not claim that the stipulations in the plea are erroneous." (Id.) He argues that the application of the two-level enhancement precluded him from participating in the Bureau of Prisons' Residential Drug Abuse Program and from receiving a lesser sentence. (Docket No. 215-1 at 3.)

As an initial matter, it has not escaped the undersigned's attention that Petitioner does not assert that but for counsel's alleged ineffectiveness, "he would not have pleaded guilty and would have insisted on going to trial." Hill, 474 U.S. at 59. As noted above, Petitioner explicitly states that "he is not contending his guilt as to the possession of a controlled substance." (Docket No. 221 at 1.) Accordingly, Petitioner's claim fails on this basis. Nevertheless, the undersigned has considered Petitioner's claim notwithstanding this failure.

U.S.S.G. § 2D1.1(b)(1) states that "[i]f a dangerous weapon (including a firearm) was possessed, increase by 2 levels." According to the commentary accompanying this section,

> [t]he enhancement for weapon possession reflects the increased danger of violence when drug traffickers possess weapons. The adjustment should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense. For example, the enhancement would not be applied if the defendant, arrested at his residence, had an unloaded hunting rifle in the closet.

U.S.S.G. § 2D1.1 cmt. 3 (2010). Accordingly, the enhancement is proper when "the weapon was possessed in connection with drug activity that was part of the same course of conduct or common scheme as the offense of conviction." United States v. Manigan, 592 F.3d 621, 628-29 (4th Cir. 2010) (internal quotation marks omitted); see also United States v. Falesbork, 5 F.3d 715, 721 (4th Cir. 1993) (noting that the sentencing court "must look to the entire course of relevant criminal conduct, not merely the narrow offense of conviction" when determining whether the enhancement should apply). "[T]he proximity of guns to illicit narcotics can support a[n] . . . enhancement of a defendant's sentence under section 2D1.1(b)(1) . . . . Similarly, firearms that are readily accessible during drug activities can be deemed as possessed in connection there-with." Manigan, 592 F.3d at 629 (internal quotation marks and citations omitted). "[S]o long as a firearm's location makes it readily available to protect either the participants themselves during the commission of the illegal activity or the drugs and cash involved in the drug business, there will be sufficient evidence to connect the weapon [] to the offense conduct." Id. (internal quotation marks omitted). While the Government has the burden of proving that the weapon was possessed, the defendant has the burden of demonstrating a clear improbability that the weapons were connected to his offense. See United States v. Harris, 128 F.3d 850, 853 (4th Cir. 1997).

Even if the undersigned were to accept Petitioner's characterization of counsel's actions as falling outside "the wide range of reasonable professional assistance," Carter, 283 F.3d at 249, the undersigned finds that Petitioner cannot demonstrate that he suffered any prejudice from counsel's withdraw of the objection to the two-level enhancement pursuant to § 2D1.1(b)(1). First, as noted above, Petitioner stipulated to the two-level enhancement in his written plea agreement. (Docket No. 122 at 3.) During the plea colloquy, Petitioner stated that he understood that paragraph 9 was not

9

binding on the Court (Docket No. 176 at 18:12-23.) Petitioner's objection to the two-level enhancement would have directly contradicted the terms of his agreement.

Furthermore, Petitioner cannot demonstrate prejudice because the two-level enhancement was appropriately applied. Defendant's PSR stated that "[a]ccording to the investigative materials in this matter, several witnesses stated that the defendant possessed firearms during the distribution of illegal substances. Other witnesses stated that the defendant traded crack cocaine for firearms." (Docket No. 161 at ¶ 62.) Petitioner never filed an objection to the findings contained in the PSR. Furthermore, at sentencing, the Government stated the following:

> MS. MORGAN: Basically what happened was that after the defendant was arrested on a disorderly conduct charge in state court and was incarcerated, there was a call about his–a vehicle being registered to him having been essentially abandoned at a location near the place where he was arrested. That vehicle was seized and it was searched and there were receipts found in that vehicle for the purchase of three handguns by the defendant from a local federal firearms licensee between January of 2005 and June of 2007. They were three handguns. One was a nine millimeter Cobra Pistol. The other was a Highpoint .45 ACP and the third was a Cobra Patriot nine millimeter. Those receipts reflected the purchase of ammunition correspondingly with the purchase of the handgun.
>
> So with respect to recovered firearms, what we have recovered are evidence of the defendant's direct purchase and receipt of those firearms and ammunition. So–in addition to that, paragraph 62 documents the people–unnamed, but the people who were identified during discovery disclosed to Mr. White who said that he possessed firearms in connection with his drug trafficking activity.

(Docket No. 174 at 7:1-21.)

Petitioner offers no proof, other than his own claims, that he did not use these firearms in relation to his drug trafficking activities. He has attached to his motion an email between counsel and an incident report indicating that Petitioner's clothing store in Clarksburg, West Virginia, was burglarized at some point around October 3-5, 2007. (Docket No. 215-2 and 215-3.) Petitioner's

counsel asked counsel for the Government to reconsider the enhancement based upon this burglary. (Docket No. 215-2.) In his motion, Petitioner states that "the firearms were purchased as protection for his legitimate business, that was burglarized." (Docket No. 215-1 at 3.) However, as noted above, Petitioner purchased the three firearms well before his clothing store was burglarized. Petitioner did not object to the temporal range for those purchases provided to the Government at sentencing. Accordingly, the undersigned finds that Petitioner has not demonstrated a "clear improbability" that the firearms were connected to his offense. See Harris, 128 F.3d at 853.

The Court properly applied the two-level enhancement pursuant to § 2D1.1(b)(1), and so Petitioner cannot demonstrate the requisite prejudice for his claim. See Strickland, 466 U.S. at 691. Accordingly, the undersigned "need not consider the performance prong." Fields, 956 F.2d at 1297. Therefore, because Petitioner's claim is meritless, the undersigned recommends that his motion be denied and dismissed.

## IV.    RECOMMENDATION

For the foregoing reasons, the undersigned recommends that Petitioner's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (Civil Action No. 1:12-cv-84, Docket No. 1; Criminal Action No. 1:09-cr-52-1, Docket No. 215) be **DENIED** and **DISMISSED WITH PREJUDICE**.

Within **fourteen (14) days** after being served with a copy of this report and recommendation, any party may file with the Clerk of Court written objections identifying those portions of the recommendation to which objection is made and the basis for such objections. A copy of any objections shall also be submitted to the Honorable Irene M. Keeley, United States District Judge. Failure to timely file objections to this recommendation will result in waiver of the right to appeal

from a judgment of this Court based upon such recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Court directs the Clerk of the Court to provide a copy of this Report and Recommendation to all counsel of record as provided in the Administrative Procedures for Electronic Case Filing in the United States District Court for the Northern District of West Virginia. The Court further directs the Clerk of the Court to mail a copy of this Report and Recommendation to the *pro se* Petitioner Andre Vaughn White.

DATED: June 20, 2014

*John S. Kaull*

JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE